# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUCKMEN SERVICES, LLC, and BENCO LEASING, LLC,  Plaintiffs, | C.A.No. 17-337Erie |
| vs. | District Judge Hornak |
| DAHMER POWERTRAIN, INC., Defendant. | Magistrate Judge Baxter |

## MEMORANDUM OPINION AND ORDER

Presently pending before this Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and improper venue or pursuant to *forum non conveniens*. ECF No. 12. The motion to dismiss will be dismissed without prejudice as premature so that Plaintiffs may conduct jurisdictional discovery.

### A. Relevant Procedural and Factual Background

In this diversity action, Plaintiffs assert claims for breach of contract, breach of express and implied warranties under the contract, and unjust enrichment. Plaintiffs' claims are based on an oral agreement entered into between Plaintiffs and Defendant for the purchase of five remanufactured diesel engines.

Defendant Dahmer Powertrain, Inc. is a Missouri company with its principle place of business in Lee's Summit, Missouri. Plaintiff Truckmen Services, LLC and Plaintiff Benco Leasing, LLC are both Pennsylvania limited liability companies with their principal places of business in Erie, Pennsylvania. Plaintiffs are truck rental and truck leasing companies. ECF No. 16, ¶ 4.

1

Around January 2, 2014, Dahmer Powertrain, through its employee and/or agent Reed Shillito, sent an email solicitation to Joseph Benacci, the CEO of Truckmen Services and Benco Leasing, advertising itself as a supplier of re-manufactured Detroit Diesel engines. ECF No. 10, First Amended Complaint. About a month later, Plaintiffs and Defendant entered into an oral agreement under the terms of which Defendant was to provide five re-manufactured Detroit Diesel engines to Plaintiffs and Plaintiffs were to provide Defendant with five engine cores and monetary compensation. According to Plaintiffs, the re-manufactured engines that were delivered to them were non-conforming. Arrangements were made for the return of the re-manufactured engines to Defendant and the return of the engine cores and money to Plaintiffs. Thereafter, Plaintiffs filed suit seeking damages for breach of contract in the Erie County Court of Common Pleas and Defendant removed the case to this federal district court.

### B. Personal Jurisdiction

#### 1) Legal Standard

"Jurisdiction to resolve cases on the merits requires … authority … over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). The party "asserting jurisdiction bears the burden of showing that the case is properly before the court in all stages of the litigation." Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1992). In a diversity action such as this, the district court has personal jurisdiction over a nonresident defendant to the extent allowed by the law of the state where the court sits, subject to the constitutional limitations of due process. Fed.R.Civ. P. 4(e). See also Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001); Pennzoil Prod. Co. v. Colellit & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998).

2

Under Pennsylvania's long-arm statute, Pennsylvania courts may exercise jurisdiction to "the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat. § 5322(b). The reach of Pennsylvania's long-arm statute is therefore coextensive with the Due Process Clause of the Fourteenth Amendment. N. Pennsylvania Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990).

A court may exercise personal jurisdiction based on the defendant's general or specific contacts with the forum state. Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). When general jurisdiction exists, "the contacts between the defendant and the forum need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over the defendant to be proper," (Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 n.1 (3d Cir. 2002)), but general jurisdiction arises only when the defendant's activities in the forum state are both "continuous and systematic." Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

Alternatively, specific jurisdiction requires the cause of action to arise from the defendant's forum-related activities. N.Penn Gas, 897 F.2d at 690. Courts apply a two-part test to determine whether specific jurisdiction exists. IMO Indus. v. Keikert AG, 155 F.3d 254, 259 (3d Cir. 1998). First, the plaintiff must show that the defendant has "minimum contacts with the forum" state, such that it could "'reasonably anticipate being haled into court there.'" Pennzoil Products, 149 F.3d at 20, quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). These required minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co. v. Superior

3

Court, 480 U.S. 102, 109 (1987) quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Second, the court inquires whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476, quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). Although this second prong "need only be applied at a court's discretion," the Third Circuit has "generally chosen to engage in this second [part] of analysis." Pennzoil Products, 149 F.3d at 201. Among the factors that a court may consider in this determination are "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' [and] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.'" Burger King Corp., 471 U.S. at 477, quoting World-Wide Volkswagen, 444 U.S. at 292.

### 2) Analysis

Defendant Dahmer argues that this Court lacks specific personal jurisdiction over it. Defendant claims that it has no property or employees in Pennsylvania and has no other business contacts within Pennsylvania except for the one-time purchase agreement for five re-manufactured engines at issue in this action, which, it argues, is not enough for this Court to exercise jurisdiction over it.

Once a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to demonstrate "contacts with the forum state sufficient to give the court *in personam* jurisdiction." Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984) (internal

quotation omitted).[1] In opposition to Defendant's jurisdictional challenge, Plaintiffs argue Defendant engaged in extended and protracted contractual negotiations within Pennsylvania so as to subject it to personal jurisdiction in this state. In analyzing a jurisdictional challenge involving a contract, the Third Circuit instructs district courts to:

> … inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. Parties who reach out beyond their state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking. Courts are not reluctant to find personal jurisdiction in such instances. Modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.

General Elec., 270 F.3d at 150. Although a contract may provide the basis for personal jurisdiction, a contract alone does not automatically establish sufficient contacts in one party's home forum. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993). Instead, courts must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick, 238 F.3d at 256.

Plaintiffs allege that in January 2014, Reed Shillito reached out to Plaintiffs via email about the availability of Dahmer products. ECF No. 10, First Amended Complaint. In his sworn affidavit, Benacci, CEO of Truckmen Services and Benco Leasing, states that the transaction at issue in this case was initiated after Shillito affirmatively represented himself to be an account

---

[1] While a court must "accept the plaintiff's allegations as true and construe disputed facts in [its] favor" (Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003)), a plaintiff may not rest solely on the pleadings to satisfy its burden of proof. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Rather, the plaintiff must present sworn affidavits or other evidence that demonstrates a *prima facie* case for the exercise of personal jurisdiction. Mellon Bank PSFS v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). Because a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings," Time Share Vacation Club, 735 F.2d at 67 n.9, the court may consider all undisputed evidence submitted by the parties.

representative of AmeriQuest and that AmeriQuest facilitated Dahmer's sale of the five re-manufactured engines to Plaintiffs. ECF No. 20, ¶ 8. Benacci explained that both AmeriQuest and NationaLease are well-known to him as companies conducting extensive business nationwide, including in Pennsylvania.[2] ECF No. 16, ¶ 27. Benacci had prior business dealings with AmeriQuest and its vendors in Pennsylvania for over twenty years. Id. Benacci explains that Dahmer conducted business directly with him and his companies, "and also with and through AmeriQuest" at the various stages of the transaction at issue in this litigation. Id. at ¶ 25.

In the initial January 2, 2014 email, Shillito represents himself as an "account representative of AmeriQuest" and indicates that he is sending this communication "to introduce myself and our company." ECF No. 16-1. The email indicates that billing is set up with AmeriQuest and then discusses the Dahmer Powertrain products and the uniqueness of the Dahmer Powertrain products. Id. Shillito's return email address indicates that he is with Dahmer. Id.[3]

During subsequent telephone conversations between Shillito and Benacci, Benacci requested a price quote for five remanufactured Detroit Diesel engines. During these telephone conversations, Shillito swears that he told Benacci that he was an employee of Dahmer and "did

---

[2] Both Plaintiff-companies are members of NationaLease, one of the largest full-service truck leasing organizations in North America with more than 150 independent businesses with more than 900 locations throughout the United States and Canada. ECF No. 16, ¶ 5. NationaLease and AmeriQuest are subsidiaries of AmeriQuest Business Services. Id. at ¶ 8. AmeriQuest conducts substantial business throughout Pennsylvania with NationaLease members and small privately-owned trucking and truck rental companies located in Pennsylvania. Id. at ¶ 9. AmeriQuest Transportation Services' website represents that AmeriQuest is headquartered in Philadelphia, Pennsylvania with a Cherry Hill, New Jersey mailing address. Id. at ¶ 26; ECF No. 16-7, page 2.

[3] Dahmer Powertrain maintains an interactive website presence at www.dahmerpower.com, which indicates that Dahmer is "recognized nationally as a leader in this industry." ECF No. 16-6, pages 2-16.

not represent that [he] was an agent of AmeriQuest, but that Dahmer was an AmeriQuest vendor and [he] was the Dahmer representative that worked with AmeriQuest members." ECF No. 18-1, Shillito Affidavit, ¶ 17.

An initial written quote was provided to Benacci which indicates, on its face, that it is from both Dahmer Powertrain and AmeriQuest. ECF No. 16-2. Benacci testifies that the quote was sent to him "directly from Dahmer." ECF No. 16, ¶ 14. Further negotiations ensued. A second quote was sent to Benacci from Shillito. Like the initial quote, the second quote indicates that it is from both AmeriQuest and Dahmer. ECF No. 16-3. Again, Benacci testifies that the quote was sent to him "directly from Dahmer." ECF No. 16, ¶ 14. Plaintiffs accepted the terms of the second quote.[4]

On February 26, 2014, Dahmer sent, or caused to be sent through AmeriQuest, an invoice for a down payment to Plaintiffs in Pennsylvania. ECF No. 16, ¶ 15. The invoice is on AmeriQuest letterhead, lists the Vendor as Dahmer Powertrain, and indicates that payment should be remitted to AmeriQuest. ECF No. 16-4. Benacci explains that in a telephone conversation with Shillito, Shillito requested direct payment to Dahmer, but that Plaintiffs paid the invoice through AmeriQuest on March 25, 2014. ECF No. 16, ¶ 15.

On April 1, 2014, Dahmer issued an invoice for the remainder of the payment to Plaintiffs. ECF No. 16-5, page 2. The invoice indicated that Dahmer was the vendor and payment should be remitted to Dahmer. Id. There is no mention of AmeriQuest on the second invoice. See id.

---

[4] According to Shillito, Matt Bogdan of AmeriQuest represented to Shillito that Benacci had agreed to the terms for the five engines and Shillito was under the impression that Benacci was going to discuss the agreement with Doug Clark of AmeriQuest. ECF No. 18-1, ¶¶ 22-23.

The five re-manufactured diesel engines were picked up from Dahmer's facility in Missouri by a freight company selected by Plaintiffs. ECF No. 20, ¶ 5. Plaintiffs notified Defendant of the non-conformity of the re-manufactured engines. Following notification of the non-conformity, negotiations for the return of the engines, engine cores, and money ensued. Involved in those negotiations were Shillito, Benacci, and AmeriQuest agents including Jim Sweeney. ECF No. 18-1, ¶ 4. According to Benacci, there were approximately a dozen telephone conferences with Dahmer regarding the failure of the goods to conform to the agreement. ECF No. 15, ¶ 9.

Two years later, in August of 2016, Shillito sent to Plaintiffs two emails very similar to the January 2014 email. One email indicated that Shillito was an account representative for AmeriQuest and the other indicated that Shillito was an account representative for NationaLease. ECF No. 16-8; ECF No. 16-9. Both the emails are solicitations advertising Dahmer Powertrain as a supplier of engines and transmissions.

This Court is satisfied that the allegations raised and the evidence presented provide more than "mere speculation" that Dahmer may have the requisite minimum contacts with Pennsylvania to support personal jurisdiction here. In other words, personal jurisdiction over Dahmer might exist. However, the evidence presented by Plaintiffs is only suggestive, not conclusive. The parameters of the relationship between Dahmer Powertrain and AmeriQuest (and to a lesser degree, NationaLease) are ambiguous, as are the role of Shillito and AmeriQuest in the marketing and in the negotiations (both in anticipation of the agreement and following the alleged breach).[5] In addition, it may be important to the Court's decision to know if

---

[5] Shillito's affidavit does little to clarify his role or that of AmeriQuest. Shillito testifies that in his capacity as Special Accounts Manager of Dahmer Powertrain, he is Dahmer's account representative for AmeriQuest Transportation Services. ECF No. 18-1. Shillito explains that

conversations, notifications or negotiations were accomplished on paper and delivered by mail, courier or otherwise, or by email, text or in-person or telephone conversations.

So, although the plaintiff has the burden to establish personal jurisdiction over the defendant, a plaintiff, such as the Plaintiffs here, may also have the right to conduct jurisdictional discovery where it "presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between the party and the forum state." Toys "R" Us, 318 F.3d at 456. Leave to conduct jurisdictional discovery should be freely granted. Renner v. Lanard Toys Ltd., 33 F.3d 277, 283-84 (3d Cir. 1994). The rationale for freely granting jurisdictional leave is that many jurisdictional facts are within the exclusive control of the defendant and that, without the benefit of discovery, the plaintiff may be unable to meet its burden in establishing personal jurisdiction. Compagnie Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983).

Because Plaintiffs have presented sufficient evidence to suggest that personal jurisdiction may exist, jurisdictional discovery of Defendant Dahmer's business activities in Pennsylvania will be allowed. This discovery period will be limited to 45 days and should include discovery regarding Dahmer's product sales and sales efforts in Pennsylvania, Dahmer's marketing efforts in Pennsylvania, and Dahmer's affiliations and associations with other companies in Pennsylvania, including NationaLease and AmeriQuest.

---

Dahmer is a vendor of AmeriQuest and sells products to AmeriQuest members and members of its affiliates including NationaLease. Id. at ¶ 5. AmeriQuest brokers deals between its members and Dahmer Powertrain. Id. at ¶ 7. According to Shillito, Plaintiffs and Defendant agreed that the sale of the re-manufactured engines "was to go through AmeriQuest." Id. at ¶ 18.

AND NOW, this 15th day of August, 2018;

IT IS HEREBY ORDERED that that motion to dismiss [ECF No. 12] is dismissed, without prejudice, as premature.

IT IS FURTHER ORDERED that the parties are free to conduct jurisdictional discovery, ending on October 1, 2018.

IT IS FURTHER ORDERED that any renewed dispositive motion is due October 16, 2018, wherein Defendant may revisit the issue of lack of jurisdiction as well as improper venue.

In accordance with Fed.R.Civ.P. 72(a), the parties are allowed fourteen (14) days from the date of service to file written objections to this Order. Failure to file timely objections may constitute a waiver of rights.

/s/ Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
United States Magistrate Judge